UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FECKIERT EXILHOMME,           )
                              )
      Petitioner,             )
                              )      CIVIL ACTION NO.
v.                            )      08-10552-DPW
                              )
LUIS SPENCER,                 )
                              )
      Respondent.             )

MEMORANDUM AND ORDER
August 24, 2011

After unsuccessfully appealing his second-degree murder conviction in Massachusetts state courts, petitioner Feckiert Exilhomme now seeks a federal writ of *habeas corpus*. As grounds for federal relief, Exilhomme argues that he received ineffective assistance of counsel and that his conviction constitutes a manifest injustice. After carefully considering Exilhomme's claims, I conclude that he is not entitled to relief in this court and will deny his petition.

**I. BACKGROUND**

**A.    Factual Background**

When federal courts examine a petitioner's claims under 22 U.S.C. § 2254, state court factual determinations are presumed correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The factual determinations are recounted in the

Massachusetts Appeals Court's summary of the facts, which I

supplement by reference to certain trial testimony:

> On July 23, 2002, at about 12:45 A.M., the defendant
> [Exilhomme] stabbed the victim [Oscon Sainterling] in
> the groin with a knife that resulted in his death.
> According to the Commonwealth, the killing had been
> planned by the defendant, who was acting out of revenge
> for the attention he perceived the victim had paid to
> his girlfriend [Martine Nherisson]. The defendant
> maintained however, that he had tried to talk to the
> victim earlier in the day to settle their problems, but
> their mutual friends interfered and turned on the
> defendant. Later that evening, when the defendant
> learned that the victim and some of his friends were
> looking for him, and believing that they had armed
> themselves with knives, the defendant grabbed a knife
> from his kitchen and went outside with it because he
> did not want anyone coming to his apartment and harming
> his mother and sister, with whom he lived. Outside, he
> encountered the victim, who was alone[and] appeared to
> be holding something in his waist[band]. The defendant
> claimed that he was afraid the victim would kill him so
> he stabbed the victim in self-defense. The victim did
> not, in fact, have any weapons with him.

*Commonwealth v. Exilhomme*, No. 05-P-418, 2007 WL 1138442, at *1

(Mass. App. Ct. Apr. 17, 2007) (order pursuant to Mass. App. Ct.

R. 1:28 Summary Disposition).

Before Exilhomme left his apartment, he had been talking to

Martine Nherisson on the phone. While the two were speaking,

Nherisson investigated loud banging at the door. She found the

victim and several friends, who were looking for Exilhomme.

According to Exilhomme, he overheard someone say that they had

knives. Exilhomme grabbed a 14-inch steak knife from his kitchen

and went outside, where he eventually encountered the victim.

**B.  Proceedings Through Trial**

Exilhomme was indicted on a charge of murder in the first degree.  *Exilhomme*, 2007 WL 1138442, at *1.  At trial, he testified on his own behalf.  Before dismissing the jury for deliberations, the trial judge charged the jury with oral instructions on first degree murder, the lesser included offenses of second degree murder and voluntary manslaughter due to excessive force in self defense, and on self defense.  *Id*. at *2. The judge also provided the jury with a written summary of the instructions.  *Id.* at *1.

The trial judge provided the following oral reasonable doubt instruction:

> In every criminal case, as we discussed at the very beginning of our case during empanelment, in every criminal case, an accused person is presumed innocent and retains that presumption of innocence until and unless the prosecution establishes guild of a charge by proof beyond a reasonable doubt. And that burden of proof never leaves the shoulders of the prosecution. It stays there from the start to the finish of the case.
>
> Now, throughout our lives we have heard that phrase, proof beyond a reasonable doubt, and as we grow up, and as we grow older, we form a general sense about its meaning.  We know that it is a very heavy burden of proof.  But beyond that, beyond encountering it in our culture, through literature, drama, stories, periodicals, accounts of trials, we probably don't advance beyond that general sense that proof beyond a reasonable doubt is a very heavy burden of proof.  We want to define it as precisely as we can.  So I'm going to define it for you now. . . .
>
> Let me address first the doctrine of proof beyond a reasonable doubt.  Proof beyond a reasonable doubt

consists of the following critical points.  First of
all, it is proof to a high degree.  Second, it is proof
beyond that of a mere probability.  It is more than
proof of a mere probability.  Probability means more
likely than not.  It is more than that.  It is more
than proof of a mere probability.  Third - - by the
way, when I say probability, please remember that
probability means more probable than not.  The burden
of proof beyond a reasonable doubt requires proof
beyond that of a greater probability.

        Further, it requires more than proof of a strong
probability.  It is more than a strong probability.
However, it does not mean proof to an absolute
certainty nor proof beyond all possible doubt.  It does
not mean proof to an absolute certainty, and it does
not mean proof beyond all possible doubt.

        The law refers to proof beyond a reasonable doubt
as proof to a, quote, moral certainty.  Proof to a
moral certainty means that a juror must conscientiously
consider all the evidence and then have a resulting
firm and settled belief that the chart is true.  Let me
repeat that point.  Proof to a moral certainty means
that a juror must conscientiously consider all the
evidence and have a resulting firm and settled belief
that the charge is true.

        If a juror has conscientiously considered all the
evidence and hasn't reached a firm and settled belief
in the truth of a charge, then the juror has reasonable
doubt and must vote to acquit.  That is the definition
of proof beyond a reasonable doubt, and you'll have it
with you in writing in the deliberation room.

The written instructions on reasonable doubt submitted to the

jury were a more concise version of the oral instructions.[1]

_____

        [1]The written instruction on reasonable doubt stated:
Proof beyond a reasonable doubt is proof to a high
degree.  It is more than proof of a mere probability
(more likely than not) of guilt.  It is more than proof
of a strong probability of guilt.  However, it does not
mean proof to an absolute certainty nor proof beyond
all possible doubt.  The law refers to proof beyond a
reasonable doubt as proof to a "moral certainty."

Exilhomme's counsel did not object to the oral reasonable doubt charge or to the written, summary instructions; nor did he request an instruction regarding voluntary manslaughter due to reasonable provocation or sudden combat.  On June 16, 2003, the jury found Exilhomme guilty of murder in the second degree, and the trial judge sentenced Exilhomme to the mandatory life sentence.

**C.    Post-Trial Proceedings**

Exilhomme appealed his conviction and thereafter filed a motion for a new trial.  As grounds, he cited ineffective assistance of trial counsel for (1) failure to object to partial written instructions, (2) failure to object to a defective reasonable doubt instruction, and (3) failure to request an instruction on the alternative theory of voluntary manslaughter. The Appeals Court stayed the appeal of conviction pending the resolution of the new trial motion.

The trial judge denied the motion for a new trial on February 24, 2006.  *Commonwealth v. Exilhomme*, No. 2002-01779, Rulings (Mass. Supr. Ct. Feb. 24, 2006).  The trial judge

---

Proof to a moral certainty means that a juror must conscientiously consider all the evidence and have a resulting firm and settled belief that the charge is true.  If a juror has conscientiously considered all the evidence and has not reached a firm and settled belief of the truth of a charge, then the juror has reasonable doubt upon that charge.

(App., Ex. 1.)

rejected Exilhomme's argument that any written instructions
submitted to the jury required a verbatim reproduction of the
oral instructions. *Id.* at 2-3. The judge stated that "[t]he
governing decisions now authorize, or even encourage, the
submission of the elements of charged crimes to the jury by
summary written instruction accompanying deliberation." *Id.* at
3. Because there was no basis for an objection, the court
concluded, counsel was not deficient in failing to raise one.
*Id.* The trial judge rejected Exilhomme's second failure-to-
object claim on similar futility grounds. *Id.* at 4. The court
determined that, although the "pure *Webster* charge"[2] was not
given, "[b]oth the oral and written instructions itemize each
essential element of the *Webster* charge and its modern
adaptations." *Id.*

    The trial judge also found no deficiency in counsel's
failure to request the alternative voluntary manslaughter
instruction. *Id.* at 5. He observed that the defense was "built
. . . upon evidence and argument of self-defense or excessive
force in self-defense." *Id.* Thus, he found defense counsel made
a reasonable tactical decision not to pursue the reasonable-
provocation or sudden-combat defense because that theory "would

---

[2]A *Webster* charge, used by many judges in the Commonwealth,
refers to the explanation of reasonable doubt provided by Supreme
Judicial Court Chief Justice Leonard Shaw in *Commonwealth v.
Webster*, 59 Mass. 295 (1850).

have created a tension with the theories of self-defense (either fully exculpatory or excessive) and would have created the risk of undermining the credibility of both the themes of self-defense and heat of passion." *Id.* The trial judge concluded that defense counsel "was entitled to make a rational tactical choice to omit the additional theory" and doing so was not a "'serious incompetency' or 'performance measurably below that which might be expected from an ordinary fallible lawyer.'" *Id.* (quoting *Commonwealth v. Saferian*, 315 N.E.2d 878, 883 (Mass. 1974)).

The Appeals Court consolidated the appeal with his appeal of the conviction, which was based on the same grounds raised by the motion. In its brief, unpublished opinion affirming the conviction and decision, the Appeals Court agreed with the trial court's reasoning. *Id.* at *1–2. The court concluded that counsel was not ineffective in failing to object to the written or reasonable-doubt instructions because those instructions were not erroneous. *Id.* at *1–2. Quoting *Commonwealth v. Guy*, 803 N.E.2d 707, 718 (Mass. 2004), the court stated that "[a] judge may provide the jury with an accurate statement of the elements of a crime in a summary form, in writing, without the parties' consent." *Id.* at *1 (quotation marks omitted). With respect to the written and oral reasonable doubt charges, the court observed that the instructions were "identical in all material respects to those that withstood similar challenges in [*Commonwealth v.*

*Walker*, 861 N.E.2d 457, 463–64 (Mass. App. Ct. 2007)].” *Id.* at
*1–2. The court determined that the “judge properly explained
the concept of proof beyond a reasonable doubt,” and that “[t]his
conclusion is bolstered by the fact that the jury acquitted the
defendant of the most serious crime with which he was charged,
suggesting at least that the jury were prepared to reject charges
not adequately supported by the evidence.” *Id.* at *2

In rejecting Exilhomme's contention that counsel was
ineffective for failing to request an instruction on the
alternative lesser included offense, the Appeals Court “agree[d]
both with the motion judge's reasons and the reasons stated in
the Commonwealth's brief, pages eighteen through thirty-one.”
*Id.* Specifically, the court concurred in the trial court's
determination that instructing on involuntary manslaughter based
on reasonable provocation or sudden combat would have “created
tension” with defense's theory of self defense and, accordingly,
counsel's failure to object was a “reasonable tactical choice.”
*Id.*

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of
1996 (“AEDPA”), 28 U.S.C. § 2241 *et seq.*, a federal court may
grant a state prisoner *habeas* relief if the state court's
decision on the merits “resulted in a decision that was contrary
to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 225A(d)(1).

The Supreme Court has held that "clearly established federal law" only "refers to the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. An "unreasonable application of" clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the . . . prisoner's case." *Id.* at 407. An application of clearly established federal law is unreasonable under this standard only if it is "objectively unreasonable," not merely if it is incorrect. *Id.* at 409; *see also Grant v. Warden, Me. State Prison*, 616 F.3d 72, 76 (1st Cir. 2010) ("Under this deferential standard, the state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error." (citation and internal quotation marks omitted)). Finally, the First Circuit has interpreted the "unreasonable application" standard to mean that

"if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *L'Abbe v. DiPaolo*, 311 F.3d 93, 98 (1st Cir. 2002) (citation and quotation marks omitted).

### III. ANALYSIS

Citing *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982), the Commonwealth argues at the outset that I should dismiss Exilhomme's petition as an improper "mixed" petition containing both exhausted and unexhausted claims. In particular, the Commonwealth contends that Exilhomme's first and fourth claims — ineffective assistance of counsel (a) for failure to object to written supplemental instructions and (b) on the basis of manifest injustice — were not appealed to the Supreme Judicial Court and, consequently, are unexhausted.

AEDPA mandates that *habeas* relief "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "It follows that a petitioner's failure to present his federal constitutional claim to the state courts is ordinarily fatal to the prosecution of a federal habeas case." *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (citation omitted). As a consequence, all claims of error in Massachusetts convictions must be fairly presented to the Supreme Judicial Court, in this case through an appeal for further

appellate review, in order to be exhausted under AEDPA.  *See Fusi v. O'Brien*, 621 F.3d 1, 6 (1st Cir. 2010).

Additionally, AEDPA demands total exhaustion of *all* claims raised in a *habeas* petition.  *Burton v. Stewart*, 549 U.S. 147, 154 (2007) (*per curiam*).  When a petitioner exhausts some of his claims and fails to exhaust others, a district court generally should dismiss the "mixed" petition.  *Id.*  Thus, absent limited circumstances not present here,[3] a petitioner with a "mixed" petition faces the choice of (1) dismissing the unexhausted claims, proceeding only with the exhausted claims, and risking procedural default of the unexhausted claims or (2) withdrawing the *habeas* petition entirely in order to exhaust all claims and return to federal court with a second petition at a later date, thereby risking failure to meet AEDPA's one-year statute of limitations.  *Id.* (citation omitted).  However, "[a]n application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2) (emphasis added).

Exilhomme raised the first and fourth claims of error in the Appeals Court, but he did not seek further review of those claims

---

[3]In limited circumstances, the *habeas* court can stay and hold the petition in abeyance while the petitioner returns to the state courts to exhaust all of his claims.  *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).

11

by the Supreme Judicial Court.  While there is some question whether Exilhomme's fourth — manifest injustice — claim is exempt from exhaustion requirements,[4] there is no question that his first — written supplemental instructions — claim is unexhausted. It only takes one unexhausted claim to render the entire petition "mixed."  However, I decline to dismiss the petition as a whole because, "where, as here, a *habeas* petitioner's unexhausted claim is patently without merit, the AEDPA allows a federal court, in the interests of judicial economy, to dispose of that claim once and for all."  *See Coningford*, 640 F.3d at 483.  Accordingly, I will address, on the merits, all four of Exilhomme's asserted grounds for *habeas* relief.

## A.    Ineffective Assistance of Counsel

The Supreme Court has established that "a defendant must show both deficient performance and prejudice in order to prove

---

[4]A petition for relief from conviction due to manifest injustice, the fourth claim raised by Exilhomme in his *habeas* petition, is a Massachusetts state-law claim not subject to review by this court.  *See Simpson v. Matesanz*, 175 F.3d 200, 210 (1st Cir. 1999).  The federal analogue to a manifest injustice claim is a claim for relief due to actual innocence, which is what Exilhomme asserts for the first time in his memorandum in support of the petition before me.  The First Circuit recently observed that "[t]here may be an exception to the exhaustion bar for cases involving colorable claims of actual innocence." *Coningford v. Rhode Island*, 640 F.3d 478, 482 n.2 (1st Cir. 2011) (citation omitted).  Whether the claim is exempt, unexhausted, or even properly raised is immaterial here, however, because the unexhausted written instructions claim alone renders Exilhomme's petition "mixed."  In any event, as explained below, *see supra* Part III.B, the actual innocence claim is without merit.

that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690)).  In reviewing counsel's performance, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  Notably, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

The prejudice prong of the *Strickland* test presents a high hurdle for *habeas* petitioners.  The Supreme Court has held that "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* at 792 (quoting *Strickland*, 466 U.S. at 696).  The Court has further clarified this standard, stating that "[t]he likelihood of a different result must be substantial, not just conceivable" and that "the difference

between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* (citing *Strickland*, 466 U.S. at 693).

"The clearly established federal law governing ineffective assistance of counsel claims is the framework established in *Strickland*." *Jewett v. Brady*, 634 F.3d 67, 75 (1st Cir. 2011) (citation omitted). Massachusetts applies a "functional equivalent" to the *Strickland* deficiency standard, and the Massachusetts "analogue" is *Commonwealth v. Saferian*, 315 N.E.2d 878 (1974). *Jewett*, 634 F.3d at 75 (citations omitted). The Appeals Court considered Exilhomme's ineffective assistance of counsel claims under this standard, concluding (1) that, because the trial court's unobjected-to actions were not in error, counsel could not have been ineffective in failing to object to them; and (2) that counsel's decision not to request a manslaughter-by-provocation instruction was a reasonable tactical decision. *See Exilhomme*, 2007 WL 1138442, at *1-2 (relying in part on *Commonwealth v. Conceicao*, 446 N.E.2d 383, 389 (Mass. 1983), which discusses the *Saferian* standard). Consequently, because the state court identified the correct standard under *Strickland*, I must determine whether the state court's determinations were an "unreasonable application" of that standard.

In undertaking this analysis, I must grant considerable deference to a state court's ineffective-assistance determination. Such deference is due "because the *Strickland* standard is a general standard, [and] a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")); *see also Harrington*, 131 S. Ct. at 788 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (citations omitted)). Consequently, the inquiry on *habeas* review of a state-court's ineffective-assistance-of-counsel determination is "not whether counsel's actions were reasonable[, but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S. Ct. at 788.

## 1. Failure to Object to Written Jury Instructions

Exilhomme argues that his counsel's failure to object to the partial written jury instructions constituted ineffective assistance of counsel because the written charge was not an "exact reproduction" of the oral charge and, in any event,

15

contained errors of law.[5]  Exilhomme relies upon *Commonwealth v.*
*Lavalley*, 574 N.E.2d 1000, 1007 n.15 (Mass. 1991), in which the
Supreme Judicial Court stated that, "[w]hile we endorse the use
of written instructions if agreed to by the parties, they should
be an exact reproduction of the judge's oral charge."  *Id.*
(citation omitted).  However, subsequent Massachusetts case law
has evolved to interpret *Lavalley* as not prohibiting the
submission to the jury of summary charges that are not verbatim
transcriptions of the entire oral charge.  *See Walker*, 861 N.E.2d
at 466 (concluding that it "d[id] not read *Lavalley* to create any
such proscription").

As noted by the Appeals Court here, *Exhilhomme*, 2007 WL
1138442, at *1, the Supreme Judicial Court has held that "[a]
judge may provide the jury with an accurate statement of the
elements of a crime in a summary form, in writing, without the
parties' consent."  *Guy*, 803 N.E.2d at 718.  In fact, the *Guy*
court appears to encourage such a practice: "It is now time to
recognize that reasonable steps to assist a jury in performing
their function should be encouraged.  As long as the judge makes
it clear that the jury must find each element of the crime beyond

---

[5]The Commonwealth argues that this claim should be dismissed
because it raises only a state law claim, which is not cognizable
on *habeas* review.  While the underlying claim of error —
submission of incomplete, summary written instructions — does
rest on state law grounds, ineffective assistance of counsel is
arguably a federal due process claim reviewable by this court.

a reasonable doubt, a judge may, in the exercise of discretion, provide a jury with an accurate statement of the elements of each crime charged." *Id.* at 719 (quoting *Commonwealth v. DiBennedetto*, 693 N.E.2d 1007, 1013 (Mass. 1998)). This is consistent with lower federal court case and there is nothing in United States Supreme Court jurisprudence to the contrary.[6] Applying these principles, the Massachusetts Appeals Court has found that submission of a written charge regarding reasonable doubt is not improper. *See Walker*, 861 N.E.2d at 466. The Appeals Court was not unreasonable under either state or federal law in determining that any objection by Exilhomme's counsel to the mode of delivering instructions would have been futile.

Exilhomme also contends that defense counsel was ineffective in failing to object to the written instructions because those instructions contained errors of law, and those errors were amplified to the jury when written. The two identified errors mirror claims two and three of Exilhomme's *habeas* petition: (a)

---

[6]Although the Supreme Court has not addressed written or partial jury instructions, the First Circuit has "endorsed" the practice of submitting a written copy of the charge to the jury. *See McGonagle v. United States*, 137 F. App'x 373, 376 (1st Cir. 2005) (citing *United States v. Parent*, 954 F.2d 23, 24 n.1 (1st Cir. 1992)). The First Circuit has also found no error when a trial judge used transparencies to "illustrate" his instructions, "projecting them onto the wall opposite the jury during the charges and sending *some but not all of them* into the jury room." *United States v. Previte*, 648 F.2d 73, 84 (1st Cir. 1981) (emphasis added).

improper reasonable doubt charge and (b) absence of any charge on involuntary manslaughter due to reasonable provocation or sudden combat. I turn in the next two sections to the substance of the instructions.

For present purposes, despite its unexhausted and arguably wholly state-law nature, I am satisfied that the failure to object to the use of written instructions claim is itself without merit and will deny *habeas* relief as to this ground.

## 2. Failure to Object to Reasonable Doubt Instruction

That the government must prove every element of the offense beyond a reasonable doubt is "[o]ne of the cornerstones of the criminal trial," and failure to apply this level of proof violates the Due Process Clause. *United States v. Rodriguez*, 162 F.3d 135, 145 (1st Cir. 1998) (citing *In re Winship*, 397 U.S. 358 (1970)). "The term 'beyond a reasonable doubt' is one of the most bandied, but perhaps least precisely defined phrases in criminal law." *Id.* The Supreme Court has held that "the constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1995) (citation omitted). Rather, a reasonable doubt charge, "taken as a whole, . . . [must] correctly conve[y] the concept of reasonable doubt to the jury." *Id.* (citation and quotation marks omitted) (alterations in original). When considering a particular charge,

"[t]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." *Id.* at 6 (citation omitted).

Exilhomme argues that the trial judge's charge on reasonable doubt failed to set out the proper standard and provided no meaningful guidance to the jury. Consequently, he contends, he was convicted on less than the requisite proof. Because the charge was so devoid of meaning, he argues, counsel was deficient in not objecting to the charge.

The Appeals Court examined the entirety of the charge to determine whether it "properly explained the concept of proof beyond a reasonable doubt." *See Exilhomme*, 2007 WL 1138442, at *2. In doing so, the court applied the state law functional equivalent of the *Victor* analysis. Citing to *Walker*, in which it had found a similar jury charge[7] by the same trial judge to be

---

[7]The oral instruction at issue in *Walker* provided:
The first definition is the definition of proof beyond a reasonable doubt. Proof beyond a reasonable doubt has the following essential meaning: First of all, it is *proof to a high degree*. Second, it is *more than proof of a probability or greater likelihood of doubt*. Further, it is *more than proof of a strong probability of guilt*; however, it does not mean proof to an absolute certainty, nor proof beyond all possible [guilt]. The law refers to proof beyond a reasonable doubt as proof to a moral certainty. And proof to a moral certainty means that a juror first must conscientiously consider all the evidence and must then reach a resulting firm and settled belief that the charge is true. If a juror has conscientiously

constitutional, the Appeals Court found "[t]here was no error,"
and that defense counsel was not ineffective for failing to
object.  *Id.*

Exilhomme identifies three phrases that, he argues, are so
vague that they fail to accurately describe the necessary level
of proof: "proof to a high degree," "proof beyond that of a mere
probability," and "proof beyond that of a greater probability."
However, these three phrases separately considered misrepresent
the charge "taken as a whole."[8]  The trial judge also explained
that reasonable doubt is "more than proof of a strong
probability" but "not . . . proof to an absolute certainty nor
proof beyond all possible doubt."  Furthermore, the trial judge
emphasized the importance of considering all of the evidence:

> . . . Proof to a moral certainty means that a juror
> must conscientiously consider all the evidence and then
> have a resulting firm and settled belief that the
> charge is true.  Let me repeat that point.  Proof to a
> moral certainty means that a juror must conscientiously

> considered all the evidence and has not reached a firm
> and settled belief of the truth of the charge, th[e]n
> that juror has a reasonable doubt and must vote to
> acquit. That is the definition of proof beyond a
> reasonable doubt.

861 N.E.2d at 464 (quoting record) (emphasis added).

[8]The pure *Webster* instruction that Exilhomme claims the jury
should have received contains language very similar to the three
phrases to which he objects here, *Webster*, 59 Mass. at 320 ("It
is not mere possible doubt. . . . [I]t is not sufficient to
establish a probability, though a strong one."), and the charge
upheld by *Walker* contained essentially the same phrases, *see
supra note* 6.

consider all the evidence and have a resulting firm and
settled belief that the charge is true.

      If a juror has conscientiously considered all the
evidence and hasn't reached a firm and settled belief
in the truth of a charge, then the juror has reasonable
doubt and must vote to acquit. . . .

The written reasonable doubt charge also contained this language.

*See supra* note 2.

      Exilhomme correctly observes that the charge was not a

coventional charge under the venerable Massachusetts case of

*Commonwealth v. Webster*, 59 Mass. 295 (1850).  But that does not

*ipso facto* render it constitutionally infirm.  In fact, the trial

judge's language conveys the same meaning as the — albeit more

archaic — language used in *Webster*:

> *It is not mere possible doubt;* because every thing
> relating to human affairs, and depending on moral
> evidence, is open to some possible or imaginary doubt.
> It is that state of the case, which, *after the entire
> comparison and consideration of all the evidence,
> leaves the minds of jurors in that condition that they
> cannot say they feel an abiding conviction, to a moral
> certainty, of the truth of the charge. . . . For it is
> not sufficient to establish a probability, though a
> strong one arising from the doctrine of chances, that
> the fact charged is more likely to be true than the
> contrary; but the evidence must establish the truth of
> the fact to a reasonable and moral certainty;* a
> certainty that convinces and directs the understanding,
> and satisfies the reason and judgment, of those who are
> bound to act conscientiously upon it.

*Webster*, 59 Mass. at 320 (emphases added).

      Exilhomme also argues that the use of "moral certainty" when

not used in the context of a conventional *Webster* charge is

unconstitutional.  The Supreme Court and First Circuit have

21

frowned upon use of the term "moral certainty." *See Victor*, 511 U.S. at 16; *Gilday v. Callahan*, 59 F.3d 257, 262–63 (1st Cir. 1995); *Smith v. Butler*, 696 F. Supp. 748, 753 (D. Mass. 1988) ("A clear and unavoidable conflict exists between federal and state courts in Massachusetts over the term 'moral certainty' in defining reasonable doubt."). However, the Supreme Court held in *Victor* that, in context, the jury would not have understood the phrase "moral certainty" "either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof." 511 U.S. at 16. In the wake of *Victor,* the *Webster* charge and "its modern analogues" remain commonly used in Massachusetts state courts. *Walker*, 861 N.E.2d at 463.

When placed in its proper context, use of "moral certainty" language is not necessarily unreasonable under United States Supreme Court case law. When "the rest of the instruction . . . lends context to the phrase" and emphasizes that the jurors must weigh the evidence in the case, it accurately conveys the meaning of reasonable doubt. *Victor*, 511 U.S. at 16; *see also Williams v. Matesanz*, 230 F.3d 421, 427 (1st Cir. 2000), *overruled on other grounds sub nom. McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002) (*en banc*) ("The lesson of these cases is that context is all-important and that careful scrutiny must be afforded to the setting in which 'moral certainty' references appear.").

For example, in *Victor*, the Supreme Court considered a charge similar to the *Webster* charge and held it constitutional because it emphasized proof based on the evidence. *Victor*, 511 U.S. at 16 (pointing to language in the charge describing reasonable doubt as "that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge"). The Supreme Court had earlier found an instruction contrasting "moral certainty" only with "a grave uncertainty" or "an actual substantial doubt" to be unconstitutional, *see Cage v. Louisiana*, 498 U.S. 39, 40 (1990) (per curiam), and specifically rejected the charge in *Cage* because it was based on "grave" and "substantial" certainty "rather than [on] evidentiary certainty." *Id.* at 40–41.

Exercising my limited role in reviewing state court instructions, *Victor*, 511 U.S. at 17, it is evident that the trial judge here emphasized the weight of the evidence, repeating the following phrase three times in his oral charge and twice in the written charge: "Proof to a moral certainty means that a juror must conscientiously consider all the evidence and then have a resulting firm and settled belief that the charge is true." This construction conveys the same meaning as the language in *Webster*, albeit in an "unorthodox" manner.

*Exilhomme*, 2007 WL 1138442, at *2. The trial judge's repetition of the phrase properly emphasized the significance of evidentiary certainty. *See Gilday*, 59 F.3d at 263 ("It also is significant in evaluating the effect of the term 'moral certainty' that the jury was told more than once that its decision must be based on the evidence presented." (citation omitted)).

Consequently, "there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case." *Victor*, 511 U.S. at 17. As the Appeals Court observed, the charge taken as a whole "was a correct statement of the law and did not conflict with or contradict the *Webster* language." *Exilhomme*, 2007 WL 1138442, at *2 n.2. Failure to object to a proper — though uniquely worded — reasonable doubt charge does not demonstrate deficient representation and, therefore, the Appeals Court was not itself unreasonable in determining that Exilhomme did not receive ineffective assistance of counsel. I will deny Exilhomme's petition for *habeas corpus* based on the reasonable doubt claim.

### 3. Failure to Request Voluntary Manslaughter Instruction

Exilhomme next seeks *habeas* relief on the ground that he received ineffective assistance of counsel because his attorney failed to request an instruction on involuntary manslaughter based on reasonable provocation or sudden combat. The Appeals Court found that the failure to object did not constitute

24

ineffective assistance of counsel because the evidence did not

support such a charge and counsel's tactical decision to pursue

only a self-defense theory of acquittal was not unreasonable.

*Exilhomme*, 2007 WL 1138442, at *2.  This conclusion is not

contrary to or an unreasonable application of *Strickland*.

As the Commonwealth observes, there is no clearly

established right to an instruction on a lesser included offense

in a noncapital case.[9]  *See Paulding v. Allen*, 393 F.3d 280, 283

---

[9]In *Beck v. Alabama*, 447 U.S. 625, 637 (1980), the Supreme
Court held that "if the unavailability of a lesser included
offense instruction enhances the risk of an unwarranted
conviction, [a state] is constitutionally prohibited from
withdrawing that option from the jury in a capital case."
However, the *Beck* Court expressly declined to extend this
constitutional requirement to noncapital cases.  *Id.* at 639 n.14.
More recently, the Supreme Court has held that a *habeas*
petitioner was not entitled to relief for a *Beck* claim in the
context of the penalty phase of a capital case because no
"clearly established Federal law" extended *Beck* to that context,
*Smith v. Spisak*, 130 S. Ct. 676, 684 (2010) (citing 28 U.S.C.
§ 2254(d)(1)), and observed that a state court's interpretation
of *Beck* as "inapplicable where the jury has the additional option
of life imprisonment" is "a conclusion that finds some support in
our cases," *Howell v. Mississippi*, 543 U.S. 440, 445–46 (2005)
(*per curiam*).
A majority of lower federal courts — deciding the question
before *Spisak* — have held that failure to give such an
instruction in noncapital cases cannot support a grant of *habeas*
relief.  *See Martinez v. Lattimore*, No. CV 10-3311, 2011 WL
3419615, at *18 (C.D. Cal. Aug. 4, 2011) (collecting cases).  The
First Circuit has yet to rule on the issue.  *Paulding v. Allen*,
393 F.3d 280, 283–84 (1st Cir. 2005).  Before the enactment of
AEDPA, the First Circuit recognized *Beck*'s applicability to
noncapital cases only in the "rare[]" case that the failure
resulted in a miscarriage of justice, *see Tata v. Carver*, 917
F.2d 670, 671–72 (1st Cir. 1990), but has declined to decide
whether *Tata* survives AEDPA, *see Paulding*, 393 F.3d at 283–84.
*Spisak* suggests that it does not.  However, like the *Paulding*
court, I need not resolve the question in the case before me.

(1st Cir. 2005) ("The United States Supreme Court has held that a
capital defendant maintains a due process right to receive a
lesser included offense instruction if the evidence so warrants,
but it has explicitly reserved whether this right extends to
noncapital defendants."). However, the question before me here
is not whether the *court* erred in not giving such an instruction
but rather whether *defense counsel* provided ineffective
assistance of counsel by not requesting such an instruction.

While what is required in this context under federal law
remains unsettled, the law in Massachusetts is clear.
Massachusetts law recognizes a right to a reasonable provocation
instruction where that offense is supported by the evidence.
*Commonwealth v. Carrion*, 552 N.E.2d 558, 561 (Mass. 1990).
Consequently, defense counsel's failure to request the
instruction, which should have been given if the evidence fairly
supported it, can arguably form the basis of a federal
ineffective assistance of counsel claim. *See Breakiron v. Horn*,
642 F.3d 126 (3d Cir. 2011) (finding ineffective assistance of
counsel when counsel failed to request a theft instruction, which
was supported by the evidence, because it left jury with options
only of conviction for robbery or acquittal); *Richards v.
Quarterman*, 566 F.3d 553, 569-70 (5th Cir. 2009); *see also Druery*

---

*See also Jimenez v. Wall*, No. 08-346S, 2008 WL 4974595, at *3
(D.R.I. Nov. 21, 2008).

26

*v. Thaler*, — F.3d —, 2011 WL 2859877, at *4 (5th Cir. July 20, 2011) (considering ineffective assistance of counsel for failure to request lesser included when instruction required by state law if supported by the evidence); *Redden v. Calbone*, 223 F. App'x 825, 830–31 (10th Cir. 2007) (rejecting ineffective-assistance-of-counsel claim because petitioner "introduced no evidence at trial supporting a first degree manslaughter instruction"). Although a federal court reviewing a *habeas* petition "does not exercise supervisory power over the state courts of Massachusetts" to correct instructional errors, *Smith*, 696 F. Supp. at 758, defense counsel's failure to request an instruction on a lesser included offense may rise to the level of ineffectiveness established in *Strickland* if it in some way deprived Exilhomme of "a meaningful opportunity to present a complete defense," *see Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).

Thus whether defense counsel's representation fell below reasonable professional standards by not requesting the instruction is a factual question here to which I must grant considerable deference. *See Cremeans v. Wilson*, No. 1:06-cv-01092, 2007 WL 2693091, at *5 (N.D. Ohio Sept. 11, 2007) (observing that, "assuming *arguendo* that such a due process claim is viable under federal *habeas*," "whether a defendant is entitled to an instruction on a lesser included offense is a factual

determination, thus a *habeas* petitioner must rebut the state court's finding under the 'clear and convincing evidence' standard under 28 U.S.C. § 2254(e)(1)" (citations omitted)).

Neither the trial court nor the Appeals Court provided a detailed factual determination of the question. Instead, both courts adopted the reasoning set out in the Commonwealth's respective briefs. *See Exilhomme*, 2007 WL 1138442, at *2 ("We agree both with the motion judge's reasons and the reasons stated in the Commonwealth's brief, pages eighteen through thirty-one, regarding the trial judge's instructions on voluntary manslaugher."); *Exilhomme*, Rulings, at 5 (citing "especially the analysis of the Commonwealth at memorandum ¶¶ 19-20" as support for his conclusion that the theories were inconsistent because a self defense-theory "characterizes Exilhomme as the target of an offensive attack" and a reasonable provocation theory "would characterize him as 'a mutual and sudden' combatant"). The cited portions of the Commonwealth's briefs argue that the evidence does not support a reasonable-provocation instruction. Because the appellate court expressly agreed with the Commonwealth's reasoning, I will consider this reasoning as the equivalent of factual findings rendered by the state courts.[10]

---

[10]I have previously noted my concern regarding this shorthand practice of ruling by the state courts: "While I recognize that the Appeals Court, like many courts, has a demanding caseload, shorthand reference to the briefing of a party as a grounds for decision does not encourage the appearance

Under Massachusetts law, "[a] killing may be rendered a
voluntary manslaughter if it is the result of 'a sudden transport
of passion or heat of blood, upon a reasonable provocation and
without malice, or upon sudden combat.'" *Commonwealth v.
Keohane*, 829 N.E.2d 1125, 1129 (Mass. 2005) (citation omitted).
Evidence is sufficient to warrant the instruction if "there is
evidence of provocation deemed adequate in law to cause the
accused to lose his self-control in the heat of passion, and if
the killing followed the provocation before sufficient time had
elapsed for the accused's temper to cool." *Id.* (citation and
quotation marks omitted). "[T]he provocation must come from the
victim." *Commonwealth v. Ruiz*, 817 N.E.2d 771, 781 (Mass. 2004).

Exilhomme argues that the evidence in his case supports the
charge. He argues that he heard, over the open telephone line to
Nherisson, the victim and his friends say that they had knives
and were looking for Exilhomme. Exilhomme states that,
"[h]earing that conversation and believing Mattine [*sic*]
[Nherisson] was in danger, [he] grabbed a steak knife from his
kitchen and wnet [*sic*] outside." Before he got to Nherisson, he
"encountered [the victim] running towards him with his hand in
his waistband." Exilhomme testified that the victim was a large

---

of independent judgment fundamental to a court's legitimacy.
Nevertheless, this expedient does constitute a judgment by the
state court on the merits of the issue." *Jones v. Pepe*, No. 07-
10032, 2011 WL 2971956, at *8 n.8 (D. Mass. July 20, 2011).

man who was running at him and he could not get away, so he swung the knife at him. Exilhomme also maintains that the instruction was consistent with defense counsel's trial strategy and theory of self defense. In doing so, he relies on defense counsel's closing argument, in which he told the jury that, when the victim ran at Exilhomme, his "blood is going through his veins and his arteries a mile a minute. The adrenalin is starting to pump. He tells you, I had to get those people away from my house, away from my mother, away from my sister." This, Exilhomme contends, justified the alternative voluntary manslaughter instruction.

However, even by Exilhomme's own account of the incident, there is no evidence to support a charge on either reasonable provocation or sudden combat. To support a reasonable provocation instruction, "[t]here must be evidence that would warrant a reasonable doubt that something happened [*i.e.*, provocation] which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth v. Little*, 730 N.E.2d 304, 308 (Mass. 2000) (citations and quotation marks omitted) (alterations in original). Any provocation must immediately precede the killing. *See Commonwealth v. Amaral*, 450 N.E.2d 142, 145 (Mass. 1983) ("We consider only whether the

incidents immediately preceding the killing constituted reasonable provocation.  Any history of prior hostilities between the victim and the defendant can only be viewed as a cause of the incidents preceding the killing and not as an element of the provocation.").

Even if the overheard conversation were sufficiently provocative to overwhelm Exilhomme, there was a sufficient cooling off period between when Exilhomme overheard the victim and his friends at Nherisson's and when he encountered the victim *after* arming himself and leaving his apartment.  *See Commonwealth v. McLeod*, 477 N.E.2d 972, 981 (Mass. 1985) (observing that fifteen to thirty minutes is "significantly longer cooling off period than is usually the situation in manslaughter cases). Exilhomme was not caught unaware; he purposely prepared himself for confrontation, and sought to confront the victim rather than to seek refuge.  As a consequence, he has not rebutted the Appeals Court's factual finding by clear and convincing evidence. I must defer to the state court determination that the evidence does not support the reasonable-provocation instruction.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (Rehnquist, C.J.) ("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.  In conducting *habeas* review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)).

Furthermore, the evidence here does not support an instruction based on sudden combat. According to the Supreme Judicial Court, "[g]enerally, for sudden combat to be the basis of a voluntary manslaughter instruction, the 'victim . . . must attack the defendant or at least strike a blow against the defendant.'" *Commonwealth v. Espada*, 880 N.E.2d 795, 805 (Mass. 2008) (quoting *Commonwealth v. Pasteur*, 850 N.E.2d 1118, 1129 (Mass. App. Ct. 2006)). Exilhomme ran *toward* the victim and, according to an eye witness account, initiated physical aggression by pushing him. Furthermore, Exilhomme himself testified at trial that he struck the victim before being struck: "He was running to me with his hands over his waist. I swing the knife at him." Moreover, the combat was not sudden because Exilhomme knew that the victim and his friends were looking for him and, even if he did immediately leave his apartment, any anticipated attack by the victim and his friends was just that: anticipated, not sudden.

Exilhomme points to *Commonwealth v. Acevedo*, 845 N.E.2d 274 (Mass. 2006), to support of his claim. *Acevedo* reversed a Massachusetts Appeals Court decision that had upheld a trial judge's failure to give an instruction on manslaughter by reasonable provocation or sudden combat *sua sponte* on the basis

32

that defense counsel's failure to request the instruction did not constitute ineffective assistance of counsel because the "'all-or-nothing' strategy" of arguing only self defense was a reasonable tactical decision. *Id.* at 285. The Supreme Judicial Court in *Acevedo* concluded that where the evidence supported manslaughter on both self-defense and reasonable-provocation theories, to instruct only on self defense "deprived the defendant of a substantial available defense." *Id.* The court also observed that the jury question asking whether "any mitigating factors other than excessive force in self-defense could eliminate malice" suggested the jury would have been receptive to the alternative manslaughter theory. *Id.* at 286–88. Unlike in *Acevedo*, the evidence here does not support the alternative manslaughter instruction. In any event, the Appeals Court's determination here that the trial strategy was not unreasonable is entitled to due deference and more specifically my writ does not run to review of the state Appeals Court's interpretation of Massachusetts law as to which the Supreme Judicial Court declined to extend further appellate review. *Estelle*, 502 U.S. at 67–68. Accordingly, I will dismiss Exilhomme's request for *habeas* relief on the manslaughter instruction ground.

**B.  Miscarriage of Justice/Actual Innocence**

In his fourth claim, Exilhomme argues that he is entitled to

33

*habeas* relief on the grounds of "manifest injustice" because he is innocent by way of self defense. However, as Exilhomme recognizes in his briefing, "manifest injustice" is a Massachusetts state-law construct with a less demanding standard than the federal "actual innocence" standard. *See Marshall v. Massachusetts*, No. 99-10478, 2002 WL 226151, at *3 (D. Mass. Jan. 28, 2002) ("The Massachusetts 'miscarriage of justice' standard is determined under state law and does not address actual innocence in *habeas* cases."). Thus, insofar as it is a claim based on state law, which is how the Appeals Court addressed it, it is not reviewable by this court under AEDPA. *See Estelle*, 502 U.S. at 67-68.

Insofar as Exilhomme seeks to assert a federal claim of actual innocence, he fails to meet its exacting standard.[11] He

---

[11]The Appeals Court did not address this claim directly, under either the state or federal standard. *See Exilhomme*, 2007 WL 1138422, at *1-2. It is far from certain whether such a federal claim is even viable, especially in non-capital cases. The Supreme Court has yet to rule explicitly on the issue and has expressed reluctance to do so. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009) ("Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet." (citations omitted)); *Herrera v. Collins*, 506 U.S. 390, 417 (1993) ("We may assume, for the sake of argument in deciding this case, that *in a capital case* a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.").

"has not made out a predicate showing of 'actual innocence,' if the phrase is taken to mean that no jury would likely convict [him] based on the currently known evidence." *David v. Hall*, 318 F.3d 343, 347–48 (1st Cir. 2003) (citation omitted); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995) (establishing the "actual innocence" standard in the context of overcoming procedural default as "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt"). Accordingly, I will deny his petition for *habeas* relief on the ground of actual innocence.

## IV. CONCLUSION

For the reasons set forth more fully above, Exilhomme's amended *habeas corpus* petition (Doc. No. 11) is DENIED.


/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE